UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

IN RE: )
) 4:14-CV-15
ANTHONY DAVID TEAL and ONETA )
KAY TEAL, ) Judge Curtis L. Collier
)
Debtors. )

**M E M O R A N D U M**

Before the Court is Debtors Anthony David Teal and Oneta Kay Teal's ("Debtors") appeal from an order of the United States Bankruptcy Court for the Eastern District of Tennessee denying Debtors' motion for contempt and sanctions. Debtors filed an appellant brief (Court File No. 4) and Coffee County Bank (the "Bank") filed an appellee brief (Court File No. 9). The parties waived oral argument. After giving careful consideration to the parties' arguments, the relevant case law, and the evidentiary record, the Court **AFFIRMS** the order of the bankruptcy court.

I.  **BACKGROUND**

In their motion for contempt before the bankruptcy court, Debtors accused the Bank of violating 11 U.S.C. § 524(a)(2), which bars creditors from trying to collect on debts discharged in bankruptcy. The issue before the bankruptcy court was whether certain acts of the Bank related to loan modifications executed after the Debtors had been discharged from bankruptcy were prohibited acts to collect a discharged debt in violation of the discharge injunction of 524(a)(2), or whether those acts were acts in the ordinary course of business by a holder of a

claim secured by the Debtors' principal residence to collect periodic payments in lieu of foreclosing. If the latter, such acts would be allowed by 11 U.S.C. § 524(j).

Debtors filed their voluntary Chapter 7 bankruptcy petition in October 2009. The Bank filed five claims, four secured by Debtors' residence at 212 Gotta Milk Lane (the Residence) and one secured by Debtors' property at 630 Teal Road, where their late parents lived. Debtors received a discharge on February 1, 2010, of which the Bank was aware.

Debtors' attorney, Larry Edmondson ("Edmonson"), testified before the bankruptcy court that after the Chapter 7 discharge, Debtors moved to convert the bankruptcy to Chapter 12 in an attempt to bring the Bank to the negotiating table to restructure the mortgages. A meeting was then held on February 23, 2010, during which Edmondson and Bank President Kenneth Kirby ("Kirby") worked out new payment terms on the loans secured by the Residence. Debtors operated a dairy farm, and the plan involved directly assigning proceeds from the farm to the Bank. Edmonson memorialized the terms in a memorandum dated the following day, which noted the new interest rates, maturity dates, and when milk check payments would begin.

The documents formalizing the agreement were executed on March 11, 2010. One of the documents was an assignment between Maryland and Virginia Milk Producers Cooperative Association and Mr. Teal, providing for $7,610 in milk revenue to be sent to the Bank each month. The assignment gave the Teals the unilateral power to stop payment, stating that "[c]onsent of the assignee is not required to terminate this Assignment." In exchange, the parties agreed to modifications of the four loans secured by the Residence.

2

At the bankruptcy hearing, Debtors' sole witness, Mr. Teal, disagreed with some of the Bank's version of the facts. He testified that rather than the closing occurring on March 11, 2010, with Edmondson present, it occurred on March 15 without Edmondson. However, Kirby and Edmondson testified—and the bankruptcy court found—that all documents were signed on March 11 with Edmondson present.

The Bank started receiving the assigned milk checks in early April 2010 meant to pay down the four loans secured by the Residence. The checks, however, were short beginning in June 2010 and continuing until February 2012, when Mr. Teal terminated the assignment. The shortfall at that time was $41,707.80. The Bank then began foreclosure.

Debtors filed a contempt motion alleging the Bank's actions relating to the loans violated the discharge injunction of 11 U.S.C. § 524(a)(2). They claimed as damages all of the milk payments during the two years from 2010 to 2012 on the grounds that they were involuntary payments. After a hearing on the matter, the bankruptcy court ruled in the Bank's favor.

## II.  STANDARD OF REVIEW

The district court has appellate jurisdiction to hear appeals from final judgments and orders of the bankruptcy court pursuant to 28 U.S.C. § 158(a)(1). The bankruptcy court's factual findings are reviewed for clear error and its conclusions of law are reviewed *de novo*. *In re Behlke*, 358 F.3d 429, 433 (6th Cir. 2004).

## III.  DISCUSSION

### A.  Waiver of Appeal Issues

As an initial matter, the Court must address whether Debtors waived certain appeal issues. In their Designation of Record and Statement of Issues on Appeal, Debtors listed the following issues:

1. Whether the Court erred in compelling privileged testimony from Debtors' Bankruptcy attorney.
2. Whether the Court erred in finding that the modification agreements signed by the Debtors dated March 11, 2010 was not a reaffirmation of their discharged debts in violation of 11 U.S.C. § 524.
3. Whether the Court erred in allowing parol evidence to establish consideration.
4. Whether the Court erred in finding that forbearing foreclosure was consideration for the Modification Agreements signed by Debtors

(Bankr. Court File No. 101). Debtors never amended this statement of appeal issues. Yet when they filed their appeal brief before this Court they listed and provided argument on only the following issues:

1. Whether the Court misapplied the standard regarding burden of proof.
2. Whether the Court erred in finding that the modification agreements signed by the appellants on March 11, 2010, was not a reaffirmation of their discharged debts in violation of 11 U.S.C. 524.
3. Whether the Court erred in finding that no damages existed.

The only issue stated in both lists is the second one. Federal Rule of Bankruptcy Procedure 8006 requires that the appealing party state before the bankruptcy court the issues upon which it bases its appeal. When "there are no exceptional circumstances, failure to comply with Rule 8006 waives the omitted issue on appeal." *In re Am. Cartage, Inc.*, 656 F.3d 82, 91 (1st Cir. 2011); *see also In re McCombs*, 659 F.3d 503, 510 (5th Cir. 2011); *In re Trans World Airlines, Inc.*, 145 F.3d 124, 132 (3d Cir. 1998). "This does not mean, of course, that the list of issues must be precise to the point of pedantry. An issue that is not specifically enumerated may be deemed preserved if the substance of the issue reasonably can be inferred from an issue or issues that are

4

listed." *In re Am. Cartage, Inc.*, 656 F.3d at 91.

Here, the first and third issues in Debtors' instant brief were not included in the Statement of Issues on Appeal filed in the bankruptcy court. Nor can "the substance of [those] issues reasonably [] be inferred from an issue or issues that are listed" in the Statement of Issues on Appeal. *Id.* Accordingly, Debtors waived the first and third issues listed in their brief. Also, issues one, three, and four in the Statement of Issues on Appeal are waived, as Debtors failed to argue them on appeal. Thus the only issue properly before this Court is whether the bankruptcy court erred by ruling that Debtors failed to show the Bank violated the discharge injunction of § 524(a)(2).

### B. Discharge Injunction

It is settled that "[a] creditor who undertakes to collect a discharged debt from a debtor violates the discharge injunction [of § 524(a)(2)] and is in contempt of the court that issued the discharge order." In re *Lohmeyer*, 365 B.R. 746, 749 (Bankr. N.D. Ohio 2007) (quoting *Fonner v. Overdorf* (In re *Fonner*), 262 B.R. 350, 358 (Bankr. W.D. Pa. 2001)). However, the bankruptcy discharge "extinguishes only one mode of enforcing a claim—namely, an action against the debtor in personam—while leaving intact another—namely, an action against the debtor in rem." *Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991). Because debtors often do not want the creditor to enforce its in rem remedy, § 524(f) allows voluntary payments "in spite of a discharge and without regard to the existence of an enforceable reaffirmation agreement.'" In re *Whitaker*, No. 09-50301, 2013 WL 2467932, at *7 (Bankr. E.D. Tenn. June 7, 2013).

Further, the bankruptcy code contains a specific provision addressing mortgages on primary residences. Section 524(j) exempts from the discharge injunction acts by creditors if:

5

> (1) such creditor retains a security interest in real property that is the principal residence of the debtor;
> (2) such act is in the ordinary course of business between the creditor and the debtor; and
> (3) such act is limited to seeking or obtaining periodic payments associated with a valid security interest in lieu of pursuit of in rem relief to enforce the lien.

Section 524(j); *see also* In re *Whitaker*, 2013 WL 2467932, at *7; In re *Steinberg*, 447 B.R. 355, 359 (Bankr. S.D. Fla. 2011) (Section 524(j) "empowers the mortgagee to take action to seek or obtain regular mortgage payments, in the ordinary course of business, in lieu of pursuing an in rem foreclosure.").

To sanction a party for violating § 524(a)(2), "a court must determine that the creditor's actions are willful, that is, that it deliberately acted with actual knowledge of the bankruptcy case." In re *Whitaker*, 2013 WL 2467932, at *7 (citing In re *Martin*, No. 11–8052, 2012 WL 907090, at *6 (B.A.P. 6th Cir. Mar. 7, 2012)). "As the party seeking relief, the debtor has the burden of proving that the creditor willfully violated the discharge injunction by clear and convincing evidence." *Id.* (quoting In re *Martin*, 2012 WL 907090, at *6).

Debtors contend the arrangement they entered into with the Bank was an impermissible reaffirmation of debt in violation of the discharge injunction rather than the documenting of a voluntarily entered forbearance agreement. In support of this theory, Debtors assert Kirby called Mr. Teal back to the Bank on March 15 and convinced him to sign the milk check assignments without the Teals' counsel present, in an attempt to trick the Teals into reaffirming discharged debt. However, the bankruptcy court found that this meeting did not occur, and there is no indication this finding was clear error. Further, although it acknowledged that there may have been some ambiguity, the bankruptcy court did not find that Debtors showed by clear and

6

convincing evidence that the milk checks assignments constituted a reaffirmation.[1] Debtors do not present anything on appeal that undermines the bankruptcy court's holding.

Debtors point out that post-discharge voluntary payments do not compel a debtor to continue making such payments. But the Bank does not argue to the contrary. Debtors also assert there was no new consideration for the new agreement. But even they admit that "the [bankruptcy court] did not specifically base its opinion on an analysis of this argument." Indeed, the bankruptcy court did not need to do so, given its § 524(j) analysis, which is explained below. Debtors also contend the Bank allocated the milk check payments in such a way as to pay pre-existing debts that had been discharged. However, as the bankruptcy court noted, the payments were only put toward loans secured by the Residence. The court went on to note that, given that the milk checks were applied to loans secured by the Residence, the court could "not find that the Debtors' inability to specify where or how the payments would be applied would deprive the payment of its voluntary quality" (Bankr. Court File No. 103, p. 23). Rather, Debtors wanted to retain their home so they continued making payments on all the loans secured by it. If the milk money was put toward some but not all of the loans secured by the residence, Debtors would face potential foreclosure.

Tellingly, Debtors never discuss the provision upon which the bankruptcy court based its

---

[1] The bankruptcy court observed that

> [a]lthough the Debtors discussed in their brief that the Bank was trying to obtain a reaffirmation, Mr. Teal did not testify that the Bank characterized the agreement that way during the two-year period after the execution of the modification agreements. There was no proof presented that any Bank employee told him he was personally liable for the debt. Mrs. Teal did not testify at all at the hearing

(Bankr. Court File No. 103, p. 18).

ruling: 11 U.S.C. § 524(j). The bankruptcy court properly found that this exception applied given that the Bank undisputedly still had a security interest in Debtors' principal residence, the agreement was in the ordinary course of business, and the agreement was to simply obtain periodic payments in lieu of the in rem remedy of foreclosure. *See* § 524(j).[2] In short, although the bankruptcy court noted that there were some ambiguities regarding whether the parties thought the assignment of the milk checks was part of a reaffirmation, the bankruptcy court did not err in determining that Debtors failed to show by clear and convincing evidence the Bank intended to reaffirm the debt. Rather, the arrangement fell within the exception set forth in § 524(j), which specifically covers agreements for the creditor to obtain post-discharge periodic payments in lieu of foreclosure of a debtor's principal residence.

---

[2] The bankruptcy court explained that

> the terms of the modification basically provide the terms for periodic payments going forward and remove the loans from their status as accelerated, matured obligations in default so that the Debtors could continue to make payments in lieu of the Bank foreclosing. The milk assignment provided a source of payment which Mr. Teal testified he had provided before. The court finds that the Debtors had the benefit of counsel present during negotiations and at closing. There is no evidence of harassing letters or phone calls by the Bank telling the Debtors that the obligations were not discharged, there is no evidence that the Bank told the Debtors that they could not cancel the milk assignment at any time, and there is no evidence that the Debtors attempted to cancel the assignment until 2012. After the milk assignment was terminated, the court does not find there was proof that the Bank attempted to do any more than foreclose on the Debtors following the termination of that assignment.

(Bankr. Court File No. 103, p. 20).

Case 4:14-cv-00015-CLC-SKL   Document 12   Filed 03/17/15   Page 8 of 9   PageID #: 411

## IV. CONCLUSION

For the foregoing reasons, the Court will **DENY** Debtors' bankruptcy appeal. There being no other issues remaining for adjudication, the Court will **DIRECT** the Clerk of Court to **CLOSE** the case.

**An order shall enter.**

/s/_____
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**